**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION**

| | | |
|---|---|---|
| TONY H. BURFIELD, | * | |
| | * | |
| Plaintiff, | * | |
| vs. | * | |
| | * | |
| CAROLYN W. COLVIN, | * | No. 4:14CV00161-SWW-JJV |
| Acting Commissioner, | * | |
| Social Security Administration, | * | |
| | * | |
| Defendant. | * | |

**RECOMMENDED DISPOSITION**

**Instructions**

The following recommended disposition was sent to United States District Judge Susan W. Wright. A party to this dispute may file written objections to this recommendation. An objection must be specific and state the factual and/or legal basis for the objection. An objection to a factual finding must identify the finding and the evidence supporting the objection. Objections must be filed with the Clerk of the Court no later than fourteen days from the date of this recommendation.[1] The objecting party must serve the opposing party with a copy of an objection. Failing to object within fourteen days waives the right to appeal questions of fact.[2] If no objections are filed, Judge Wright may adopt the recommended disposition without independently reviewing all of the record evidence.

**Recommended Disposition**

Tony Harold Burfield seeks judicial review of the denial of his second application for social

---

[1] 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).

[2] *Griffini v. Mitchell*, 31 F.3d 690, 692 (8th Cir. 1994) (failure to file objections waives right to de novo review and to appeal magistrate judge's findings of fact).

security disability benefits.³ The first application was denied on September 3, 2010,⁴ so this case considers whether Mr. Burfield was disabled beginning September 4, 2010.⁵ He bases disability on Hepatitis C, neck surgery, and muscle loss in left hand.

**The Commissioner's decision**. The Administrative Law Judge (ALJ) identified severe impairments in the form of degenerative disc disease of the cervical spine status post-surgery, left carpal tunnel syndrome, history of left ulnar nerve decompression, history of left forearm fracture status post open reduction internal fixation, Hepatitis C, hypertension, borderline intellectual functioning, and adjustment disorder with mixed anxiety and depressed mood,⁶ but determined Mr. Burfield can do some light work.⁷ After questioning a vocational expert about work for a person with Mr. Burfield's limitations,⁸ the ALJ determined that work exists he can do and denied the application.⁹

After the Appeals Council declined review,¹⁰ the ALJ's decision became the Commissioner's

---

³SSA record at pp. 266 & 273 (applying on Nov. 2, 2010, and alleging disability beginning Sept. 4, 2010).

⁴*Id*. at p. 155. This court affirmed the decision on Apr. 8, 2013. *See* cause no. 4:12-CV-172-HDY.

⁵*Hulsey v. Astrue*, 622 F.3d 917, 924 (8th Cir. 2010) ("The law-of-the-case doctrine generally prevents relitigation of an issue previously resolved, and requires courts to adhere to decisions rendered in earlier proceedings. This doctrine applies to administrative agencies on remand.").

⁶SSA record at p. 39.

⁷*Id*. at p. 41.

⁸*Id*. at pp. 138-47.

⁹*Id*. at p. 50.

¹⁰*Id*. at p. 1.

final decision for the purpose of judicial review.[11]  Mr. Burfield filed this case to challenge the decision.[12]  In reviewing the decision, the court must determine whether substantial evidence supports the decision and whether the ALJ made a legal error.[13]  This recommendation explains why substantial evidence supports the decision and why the ALJ made no legal error.

**Mr. Burfield's allegations**.  Mr. Burfield maintains the ALJ over-estimated his ability to work; he relies on the following reasons: (1) he maintains he meets listing 12.05C's requirements for mental retardation; (2) he contends he can use his left arm only as an assistive device; and (3) he says he functions slowly due to depression, narcotic pain medication, and limited use of the left arm.  He says his treating physician's opinion was entitled to controlling weight.  He maintains unresolved conflicts exist between the vocational evidence and the Dictionary of Occupational Titles (DOT).  For these reasons, he argues, substantial evidence does not support the decision.[14]

**Applicable legal principles**.  For substantial evidence to support the decision, a reasonable mind must accept the evidence as adequate to show Plaintiff can do some light work.[15]  "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects

---

[11]*See Anderson v. Sullivan*, 959 F.2d 690, 692 (8th Cir. 1992) (stating that "the Social Security Act precludes general federal subject matter jurisdiction until administrative remedies have been exhausted" and explaining that the Commissioner's appeal procedure permits claimants to appeal only final decisions).

[12]Docket entry # 1.

[13]*See* 42 U.S.C. § 405(g) (requiring the district court to determine whether the Commissioner's findings are supported by substantial evidence and whether the Commissioner conformed with applicable regulations); *Long v. Chater*, 108 F.3d 185, 187 (8th Cir. 1997) ("We will uphold the Commissioner's decision to deny an applicant disability benefits if the decision is not based on legal error and if there is substantial evidence in the record as a whole to support the conclusion that the claimant was not disabled.").

[14]Docket entry # 10.

[15]*Britton v. Sullivan*, 908 F.2d 328, 330 (8th Cir. 1990).

weighing up to 10 pounds."[16] The ALJ placed the following limitations on light work:

    (1) occasional climbing ramps/stairs, balancing, stooping, kneeling, crouching, and crawling;

    (2) no climbing ladders/ropes/scaffolds;

    (3) no overhead working or overhead reaching;

    (4) occasional handling with the non-dominant left arm/hand;

    (5) no concentrated exposure to hazards, including driving as part of work;

    (6) incidental interpersonal contact;

    (7) tasks learned and performed by rote with few variables and little use of judgment; and

    (8) simple, direct, concrete supervision.

The first five limitations flow from physical impairment; the last three limitations, from mental impairment. The court must determine whether Mr. Burfield can work within these parameters.

**Medical evidence shows Mr. Burfield has the physical ability to work within the ALJ's parameters**. The ALJ's determination about a claimant's ability to work must be supported by medical evidence; a claimant's subjective allegations are not enough to prove he is disabled.[17] Most

---

[16] 20 C.F.R. §§ 404.1567(b) & 416.967(b).

[17] 42 U.S.C. § 423 (d)(5)(A) ("An individual's statement as to pain or other symptoms shall not alone be conclusive evidence of disability…; there must be medical signs and findings, established by medically acceptable clinical or laboratory diagnostic techniques, which show the existence of a medical impairment…which could reasonably be expected to produce the pain or other symptoms alleged and which…would lead to a conclusion that the individual is under a disability"); 20 C.F.R. §§ 404.1508 & 416.908 ("A physical or mental impairment must be established by medical evidence consisting of signs, symptoms, and laboratory findings, not only by your statement of symptoms."); 20 C.F.R. §§ 404.1529 & 416.929 ("[S]tatements about your pain or other symptoms will not alone establish that you are disabled; there must be medical signs and laboratory findings which show that you have a medical impairment(s) which could reasonably be expected to produce the pain or other symptoms alleged and which, when considered with all of the other evidence (including statements about the intensity and persistence of your pain or other symptoms which may reasonably be accepted as consistent with the medical signs and laboratory findings),

of the medical evidence precedes September 4, 2010, the alleged onset date. The early evidence establishes the onset of most of Mr. Burfield's impairments: degenerative disc disease of the cervical spine status post-surgery,[18] history of left ulnar nerve decompression,[19] history of left forearm fracture status post open reduction internal fixation,[20] Hepatitis C,[21] and hypertension.[22]

The more probative evidence — the evidence generated during the time period for which benefits were denied — establishes the onset of carpal tunnel syndrome of the left wrist.[23] In terms of physical limitation, the probative evidence establishes a limited range of motion in the neck and muscle atrophy in the left, non-dominant hand.[24] According to the orthopedic examiner, these problems will unlikely improve,[25] but the ALJ accommodated the limitations by excluding overhead work/reaching and limiting the use of the left arm/hand.

With the exception of confirming Mr. Burfield's candidacy for Hepatitis C drug therapy,[26] treatment records document regular visits to an out-of-state pain clinic for narcotic pain medication.

---

would lead to a conclusion that you are disabled.").

[18]SSA record at p. 569 (he underwent an anterior fusion at C6-7 in 2003) & p. 565 (on Mar. 29, 2007: he is status post ulnar decompression and C1/2 discectomy).

[19]*Id*. at p. 565.

[20]*Id*. at p. 605 (Aug. 21, 2008, operative report for left arm fracture) & p. 595 (Dec. 18, 2008: release to full activity).

[21]*Id*. at p. 620 (Mar. 7, 2002, positive for Hepatitis C).

[22]*Id*. at p. 696 (Nov. 16, 2007, including hypertension as a diagnosed impairment).

[23]*Id*. at p. 802 (July 11, 2012, nerve conduction study left wrist).

[24]*Id*. at pp. 523-28 (agency physical exam on Feb. 24, 2011) & pp. 797-98 (agency orthopedic exam on July 2, 2012).

[25]*Id*. at p. 798. *See also id*. at p. 564.

[26]*Id*. at p. 502 (Sept. 15, 2010, patient says he will think about it).

He received no treatment for Hepatitis C and no recent treatment for hypertension.

Mr. Burfield walks normally.[27] He can squat and rise.[28] No evidence suggests he can only use his left arm as an assistive device. He claims medication side effects cause him to function slowly, but he reported no medication side effects in his agency pleadings.[29] To the extent Mr. Burfield experiences side effects, the ALJ eliminated concentrated exposure to work hazards, to include driving as part of work.[30]

Mr. Burfield claims the ALJ over stated his ability to work, but the medical evidence indicates the ALJ under estimated his ability to work. The ALJ limited climbing ramps/stairs, balancing, stooping, kneeling, crouching, or crawling, but there is no evidentiary basis for those limitations. Instead, the ALJ included limitations from the decision denying the first application.[31] One year after his alleged onset date, Mr. Burfield's wife reported that he worked for six to eight hours per day.[32] When given the opportunity to recant that report,[33] the wife did not change her

---

[27] *Id*. at pp. 526 & 798.

[28] *Id*.

[29] *Id*. at pp. 319 & 361.

[30] *Id*. at p 142 ("Because of medication side effects, find the individual must avoid concentrated exposure to hazards, including no driving as part of work.").

[31] *Id*. at p. 141 ("I'm going to try to incorporate limitations from the previous file and the current file as best I can.").

[32] *Id*. at p. 774 (reporting to the pain clinic that Mr. Burfield became involved with family and friends since taking pain medication; he now works at odd jobs where he was unable to do so before; he usually works for 6-8 hours a day).

[33] *Id*. at p. 148 (responding to Burfield's denial that he had been working by asking the attorney to get some clarification about what the wife meant in the letter).

report.[34]

Agency medical experts limited Mr. Burfield to medium work with occasional handling with the left hand,[35] but the ALJ limited him to light work with additional limitations. The treating physician's statement reporting disabling limitations[36] warranted no weight because it lacks support and contradicts the objective medical evidence.[37] A reasonable mind would accept the evidence as adequate to support the ALJ's determination about Mr. Burfield's physical ability to work.

**The evidence shows Mr. Burfield has the mental capacity to work within the ALJ's parameters**. The ALJ ordered a post-hearing mental diagnostic evaluation and IQ testing. One of Mr. Burfield's IQ scores appears to fall within the required range for listing 12.05C — a listing for mental retardation.[38] Although he claims the ALJ erred by failing to consider he meets listing 12.05C, Mr. Burfield had the burden of proving he meets the listing.[39]

Mr. Burfield fails to meet the listing for the following reasons: (1) He twice applied for disability benefits, but never relied on mental impairment as a basis for disability;[40] (2) he underwent

---

[34]*Id*. at p. 420 (writing that Burfield had tried to work but failed, but saying nothing about the earlier report).

[35]*Id*. at pp. 530-37 & 561.

[36]*Id*. at p. 744.

[37]20 C.F.R. §§ 404.1527, 416.927 (requiring controlling weight if treating physician opinion "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence…").

[38]In 2013, the Commissioner complied with Rosa's law by replacing the terms "mentally retarded" and "mental retardation" with "individual with an intellectual disability" and "intellectual disability." This order uses the earlier terms because the challenged decision was issued prior to the change.

[39]*Johnson v. Barnhart*, 390 F.3d 1067, 1070 (8th Cir. 2004).

[40]SSA record at p. 336 & cause no. 4:12-CV-172, docket entry # 8, attach. 6, p. 156.

a mental diagnostic evaluation for both applications, but neither examiner detected signs of mental retardation;[41] (3) Listing 12.05C requires a "valid verbal, performance, or full scale IQ score of 60 through 70,"[42] but Mr. Burfield's verbal, performance, and full scale IQ scores exceed the required range and[43] only Mr. Burfield's processing speed score falls within the required range; (4) meeting the listing requires evidence of "deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22,"[44] but there is no such evidence.

According to the second mental examiner, Mr. Burfield meets the diagnostic criteria for borderline intellectual functioning and adjustment disorder with mixed anxiety and depressed mood.[45] About the IQ scores, the examiner explained that, "Although the claimant's Processing Speed Composite score falls in the Mild Mental Retardation range, the claimant worked slowly on the timed tasks of this composite, and I believe that he is functioning above the level of Mental Retardation intellectually."[46] Under these circumstances, the ALJ was not required to discuss listing 12.05C.

Mr. Burfield has the cognitive capacity to do basic work-like tasks.[47] He prefers to be alone,

---

[41] SSA record at pp. 727 & 791.

[42] 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.05C (2012).

[43] SSA record at p. 790 (verbal comprehension: 78, perceptual reasoning: 84, working memory: 77, processing speed: 65, full scale: 72).

[44] 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.05 (2012).

[45] SSA record at p. 791.

[46] *Id.*

[47] *Id.* at p. 792.

8

but "he is generally able to communicate and interact with others in a socially adequate manner."[48] The ALJ's mental limitations adequately address Mr. Burfield's symptoms. A reasonable mind would accept the evidence as adequate to support the ALJ's determination about Mr. Burfield's mental ability to work.

**Vocational evidence shows work exists that Mr. Burfield can do**. A vocational expert identified two jobs — amusement-recreation attendant like tanning salon attendant and production assembler like fishing float assembler — as representative, available work for a person with Mr. Burfield's limitations.[49] He maintains these jobs conflict with the DOT. Relying on recent United States Court of Appeals for the Eighth Circuit case law, Mr. Burfield contends the court must remand this case because the ALJ's decision does not discuss the resolution of unresolved conflicts.

The Eighth Circuit recently stated that the ALJ has "an affirmative responsibility to ask about 'any possible conflict' between [vocational expert] evidence and the DOT…."[50] According to recent Eighth Circuit case law, it isn't enough for a vocational expert to confirm his testimony is consistent with the DOT and its companion volumes.[51] If a conflict exists, the record must reflect an explanation about why the claimant can do an identified job.

Mr. Burfield says an unresolved conflict exists about the fishing float assembler job because it requires frequent reaching, but no unresolved conflict exists. In questioning the vocational expert,

---

[48]*Id*.

[49]*Id*. at pp. 140-41.

[50]*Welsh v. Colvin*, 765 F.3d 926, 929 (8th Cir. 2014).

[51]*Moore v. Colvin*, 769 F.3d 987, 990 (8th Cir. 2014); *Kemp v. Colvin*, 743 F.3d 630, 632 (8th Cir. 2014).

the ALJ's initial limitation was occasional reaching with the left, non-dominant arm.[52] The vocational expert identified amusement-recreation attendant like tanning salon attendant and production assembler like fishing float assembler.[53] No serious argument exists about whether the ALJ and/or the vocational expert recognized a possible conflict, because occasional reaching with the left, non-dominant arm was the ALJ's only limitation.

The ALJ then added limitations; i.e., the postural and mental limitations from the decision denying the first application, and new limitations excluding overhead work/reaching, ladders/ropes/scaffolds, and concentrated exposure to hazards.[54] The vocational expert confirmed that a person with those limitations can do to identified jobs.

As an example of how a person can do those jobs, Mr. Burfield assisted in resolving the conflict. About the fishing float assembler job, he asked, "Does that require good use of both upper extremities?"[55] The vocational expert explained how a person can do at home:

> You could go ahead and modify to where even if you had to use something in your lap to hold it to go ahead and put it together. It would be best if you had both, but you could go ahead and if you held it in your lap between your knees and worked it.…That is — they can build them from home or else they can go ahead and be an employee there in – here in Fort Smith, either one.[56]

Although working from home reduces the number of available jobs, nothing suggests Mr. Burfield must work from home. The testimony explains why Mr. Burfield can do the fishing float assembler job. To the extent a conflict existed, the explanation resolved conflict.

---

[52]SSA record at pp. 140-41.

[53]*Id*. at p. 141.

[54]*Id*. at pp. 142-44.

[55]*Id*. at p. 145.

[56]*Id*. at pp. 145-46. There is a manufacturer of fishing lures in Fort Smith.

Mr. Burfield also says an unresolved conflict exists about the tanning salon attendant job because he contends the job requires more than incidental interpersonal contact. The complaint flows from a DOT companion publication identifying "dealing with people beyond giving and receiving instructions" as required temperament. Mr. Burfield says the temperament requirement creates a direct conflict with the DOT, but his argument relies on terms with different meanings.

Mr. Burfield's authority — the 1991 Revised Handbook for Analyzing Jobs — defines temperament as "the adaptability requirements made on the worker by specific types of jobs." Under this definition, a tanning salon must have the ability to adapt to dealing with people beyond giving and receiving instructions. The ALJ's limitation — work in which interpersonal contact is incidental to work performed — refers to the type of interpersonal contact work a job requires. Dictionaries provide various definitions for "incidental," but in general, definitions describe something that occurs as a result of, or in connection with, something else. Applying that meaning here, the ALJ limited him to interpersonal contact that happens as a result of, or in connection with, required tasks. The question then is: does working as a tanning salon attendant involve interpersonal contact that occurs as a result of, or in connection with, required tasks?

Mr. Burfield's authority — Job Browser Pro by SkillTRAN — lists the following relevant tasks for tanning salon attendant:

> Explains tanning service and equipment to clients, sells salon items and tanning session, schedules sessions, and cleans tanning equipment and salon: Explains tanning process, types of equipment, and prices for tanning sessions in person and by telephone. Sells tanning sessions and related products to client and collects payment from client. Develops tanning program for client based on personal interview, client evaluation form and observation of skin appearance to note skin characteristics, following recommended guidelines. Schedules appointments for tanning sessions. Explains and demonstrates use of tanning equipment and protective eye goggles.…

May sell items, such as clothes and jewelry.[57]

Interpersonal contact occurs as a result of, or in connection with, the tasks of explaining tanning services and equipment, selling salon items, and scheduling tanning sessions, because people seek tanning service, use tanning equipment, purchase salon services and items, and request tanning sessions.  Tanning-salon-attendant tasks may require dealing with people beyond giving and receiving instructions, but nevertheless, interpersonal contact occurs as a result of, or in connection with, required tasks.  No direct conflict exists.  An ALJ's error failure to question the vocational expert about a conflict between his testimony and the DOT is harmless if no conflict exists.[58]  A vocational expert's testimony answering a properly phrased hypothetical question constitutes substantial evidence supporting the ALJ's decision.[59]

### Conclusion and Recommendation

A reasonable mind would accept the evidence as adequate to show Mr. Burfield can work within the ALJ's parameters because the ALJ accounted for his primary impairments — limited range of motion in the neck and muscle atrophy in the left, non-dominant hand — and because the vocational expert identified available work.  Substantial evidence supports the decision.  The ALJ made no legal error.  For these reasons, the undersigned magistrate judge recommends denying Mr. Burfield's request for relief (docket entry # 2) and affirming the Commissioner's decision.

Dated this 15th day of July, 2015.

_____
JOE J. VOLPE
UNITED STATES MAGISTRATE JUDGE

---

[57] Docket entry # 10, attach. 5.

[58] *Renfrow v. Astrue*, 496 F.3d 918, 921 (8th Cir. 2007).

[59] *Partee v. Astrue*, 638 F.3d 860, 865 (8th Cir. 2011).